By the Court;

Cowen, J.
The declaration contains no demand' of payment from the maker nor notice of non-payment to the endorser. The defendant is in this respect treated as the maker of the notes. There are cases which-decide that when notes have been made payable to a particular person or order, or to the order of a particular person, and endorsed first by a third person, such third person has been held to be an original maker of the note, or a guarantor of payment according to the nature of the transaction and the-understanding of the parties. If such endorser put his name on the back of the note at the time it was made, according to a promise to become originally and directly responsible, or if he participated in the consideration for which the paper was given, he has been adjudged a joint maker. If his endorsement was subsequent to the making of the note and he had nothing to do with the original consideration, but put his name on the note to add to the security, he has been adjudged a guarantor. The reason of these decisions appears to be this—the paper was not negotiable mercantile paper, and was not within-the law merchant, and the person by putting his name on the note, could not become an endorser, according to the mercantile usage; but as lie put his name to the instrument to add to its security, he must be responsible in some shape, and therefore he must be considered either as maker or [216] guarantor, according to the original intention of the parties. I can perceive no analogy between- the cases last mentioned and the one under consideration. The notes in this ease are negotiable commercial paper. It is tru-e, they are made payable to Howard or bearer, but they are the same in effect as notes payable to bearer and the name of Howard may be disregarded and the notes passed by mere delivery (3 Kent's Comm. 50, 74, 5, 8).
There is no legal difference between a note payable to bearer and one payable to a particular person or bearer; neither need be endorsed to make it negotiable.- Notes payable to bearer, to a particular person or bearer, or to a particular person or order, and endorsed in blank, all pass by delivery, and neither need be endorsed to transfer it according to the law. merchant.
In this case, the plaintiff disregards the character of the defendant as endorser, by omitting to aver demand on Coleman and notice- of non-payment, the court so far treats the defendant as maker; and the only question is, whether he stands in that relation. The notes were made by Coleman, payable to Howard or bearer endorsed by the defendant and Howard then delivered them to the- plaintiff who thus became the bearer, and entitled: to sue Coleman as maker. In Brush v. Reeves’s. Adm’rs (3 John R. 439). the payee of a note, payable to bearer, endorsed it, and it was held that he. was liable as endorser, to be charged in the usual form (Bank of England v. Newman, 1 Ld Raym. 442; Eccles v. Ballar, 2 M'Cord, 388, S. P.) I do not perceive that this count presents a case susbtantially Variant from those cited. In the usual courts of declaring, the count would have run thus: “Coleman made his notes payable to Howard or bearer; the defendant endorsed the notes with his proper name, and Howard delivered them to the plaintiff.” The legal interest in the notes is thus transferred to the plaintiff by delivery, with the defendant’s name upon them as endorser. An endorsement, when the interest of the note passes, and indeed whether it does or not, as between the original parties, is in the nature of a bill of exchange drawn by the endorser on the maker, payable to the holder; [217] and in this instance, the endorsement might have been filled up by writing over the defendant’s name, “ pay the contents to Erastus Dean,” the plaintiff, “ or bearer ’’(Eccles v. Ballard, 2 M’Core, 388; Small wood v. Vernon, 1 Str. 478; Ballingalls v. Gloster, 3 East, 481; Van Slap *125 horst v. Pearce, 4 Mass. R. 258, 262). It is not material that here was no endorsement by the payee. That is necessary only when the note was payable to his order. He may then endorse his name in blank, and give the paper the same effect as if it had been originally payable to bearer. Suppose Howard had first endorsed these notes without recourse. There can bo no pretence that, in such case, the present defendant would not have stood as a valid second endorser, and liable in that capacity alone. Yet such an endorsement by the payee would have given no additional effect by way of transfer, or- security to the plaintiff.
I admit the question does not stand clear of difficulty. Cases are cited for the plaintiffs which hold that an endorsement may be equivalent to a signing of the note, and subject the apparent endorser as a real maker in severalty, or, which is the same thing, in the character of of a direct guarantor or absolute undertaker as surety. Such was Nelson v. Dubois ( 13 Johns. R. 175). But the recovery there was restricted by the opinion of the court to the third count, which set forth a promise to guarantee the maker's note in consideration of a horse sold to him. The proof offered was, that for the consideration stated, the defendant drew a note, signed by the vendee of the horse, payable to the plaintiff or bearer, which the defendant at the same time endorsed in blank. The court held that the whole transaction amounted to a guaranty within the third count, untouched by the statute of frauds. The case does not deny that had the note, like the one in question, been payable to another, or to bearer generally, the defendant would have stood in the simple relation of an endorser. Nay, had the declaration omitted the special circumstance, non constat, from the case, that it might not have averred the making of the note, the delivery of it by the plaintiff to the endorser, and then his endorsement of it to the plaintiff, with such a demand and notice as [218] would fix him in the character of a strictly commercial endorser. The counts charging a special liability were framed probably to obviate the omission of a demand and notice, the necessity for which would have been otherwise apparent from the paper itself. The difference is noticed by the case, -which admits that had it not been for the peculiar circumstance of the endorser making the note to procure credit, he could not have been treated as •a guarantor. Mr. Justice Spencer refers to the previous case of Herrick v. Carman (12 Johns. R. 159). There the note was payable to Carman & Co. or order, and endorsed by the defendant. It was delivered by him to the maker, who used it in that form to procure the goods from Carman & Co. without the defendant’s privity. The endorsement was holden to be a nullity; and that a subsequent endorsement by the payees would give it no life in the hands of the endoisce. Both cases concede that had the defendant in the last been a party to the credit, he might have been subjected, not as an endorser, but as a guarantor, to pay the money for the goods to the payees (10 Johns R. 224, S. C.) Had it been so intended, the payees, by their endorsement, might have put the note into the market as a negotiable instrument; but that was not done. The matter lay, therfore, tied up between the payees and the endorser, for better or for worse. If it had been a special guaranty arising on a credit, it would have remained there not negotiable; for it was the same as if written on a separate paper. A guaranty does not partake of the quality of the note on which it is endorsed, so as to pass and vest the legal interest in the holder, even though the latter should be payable to bearer (Lamorieux v. Hewit, 5 Wendell, 307). Josselyn v. Ames (3 Mass. R. 274), was another instance. There the payee of a note, not negotiable, endorsed it in consideration of the surrender of a former note against the maker; and it was held, that the plaintiff might write an undertaking to pay the note over the defendant’s name. What undertaking ? Not a negotiable note, within the statute of Anne, but a special contract. “ For *126 value received, I undertake to pay the money within mentioned toE. J.;” and such was the form of. the contract which the court dictated to be written over the name endorsed, as more conformable to the contract proved than the one which the plaintiff had before written of his own head. He derived power accordingly to strike out his own, and substitute that of the court. The parties then agreed that the plaintiff might take judgment for the amount on his own. The endorsement was a promissory note,- though not negotiable, and it might have been declared on as such; but the proof to sustain the authority for writing out a note, must, as the law seems to have been then understood, have shown the original consideration, and the intent with which the name was endorsed. Such a contract was sanctioned, and the declaration proceeded directly on a joint and several promissory note, in the subsequent case of White v. Howland (9 Mass. R. 315). The plaintiff loaned money to Taber, as a consideration for his note payable to the plaintiff, endorsed by Coggeshall and Howland in blank, who were privy to the loan; and an undertaking joint and several, in the form prescribed by the court in the previous case of Josselyn v. Ames, was written out by the plaintiff. The court put the case under its circumstances, on the same ground as if the defendants had acknowledged themselves holden as sureties, below the name of the maker, like the case of Hunt v. Adams (5 Mass. R. 358). In the latter form a consideration will be intended, it seems, as in the ordinary case of a promissory note. To maintain this view, the court presumed that the signatures were simultaneous.
Such are the cases relied upon to sustain this declaration. I think the utmost they establish is, that where the defendant is privy to the considera* tion, and endorses a note not negotiable, or at most one payable to order, or to the plaintiff or bearer, and not negotiated, the declaration may then charge the defendant directly as the maker. This is the extent of Herrick v. Carman, and Nelson v. Dubois, which go the farthest. None of the cases can mean, that whatever may be the consideration, if the defendant stand in the ordinary relation of a commercial endorser, he is not to be treated as [220] such. The distinction is further illustrated by Ulen v. Kittredge, 7 Mass. R. 233; Moies v. Bird, 11 id. 436, and Campbell v. Butler, 14 Johns. R. 349. These cases were all identically the same in their circumstances. The endorsers were charged on blank endorsements upon notes payable to the plaintiff or order, but expressly to raise a credit at the time in favor of the maker. The only peculiarity lies in the strong intendment from very weak evidence, which the court made in Moies v. Bird, to connect the defendant with the original consideration. In all, the plaintiff was allowed with his own hand to write a full length note over the name. The principle of all these cases is fully explained by the late one of Beckwith v. Angell (6 Conn. R. 315), which pushed the former authorities'to a greater length than they would appear originally to warrant. On a note similar to those in the last cited cases (7 and 11 Mass. R. and 14 Johns. R.), the defendant endorsed his name in blank, long after the note had been executed, as a mere surety, without the least privity with the original consideration. The plaintiff was allowed to write over it thus: “In consideration of further forbearance, I guaranty the payment of the within note.” This was in itself a promissory note, and so agreed to be within Allen v. Rightmere (20 Johns. R. 365); and that therefore no demand or notice was necessary. Peters, J., who delivered the opinion of the court, said: “ The undertaking of an endorser is always collateral, unless made otherwise by special agreement. But the defendant was not an endorser, because he was neither promisee nor endorsee. His contract was therefore necessarily special, and whatever the parties chose to make it. Had it remained blank, it must have been considered prima facie a guaranty or"nothing. This depended on the induce- *127 merit and intention with which the defendant wrote his name.” Bristol, .,J said: “ By the common law, the holder of a note has authority to write over the endorsement the real contract of the parties.” Hosmer, C. J., dissented, but he did not deny the right to fill up the blank according to the intent. He only insisted that conformably to a series of adjudications in Connecticut, the intent to be inferred from such a position of the endorser’s name was merely to make himself liable on the failure of the principal after [221] the holder had exercised due diligence in attempting the collection. The difference lay only in the mode of filling it up. Peters, J., had abundantly proved by authority the doctrine, so familiar to the mercantile community, that notes, bills or endorsements may thus be written where the intent is apparent; indeed, that the holder may put the blank paper in any form which shall accord with the intent of the names, either as makers, drawers, payees or endorsers. We arrive, through the last case, to the plain and simple foundation into which the power of the bona fide holder is resolvable—it is the intent of the parties, not written out in full, but evinced by the character of the slip on which the name appears, connected with the course of local adjudication, but subjected to be modified by oral evidence. The main difficulty in maintaining such contracts, arises out of the statute of frauds. In England, an endorsement, such as we have been considering, would probably be viewed as prima facie evidence of an intent to be made chargeable as second endorser, although it stands the first in chronological order (Bishop v. Hayward, 4 T. R. 470; and see Herrick v. Carman, and idem v. idem, before cited); and although entirely without words of negotiability, it seems to be well settled that if the payee endorse and deliver over a note or bill, he is entitled to all the privileges of a first endorser as between himself and the endorsee; for the act of endorsing is equivalent to a bill of exchange on the maker (Chitty on Bills, 218, 219, 8th Am., Springfield, 1836, from 8th Lond. ed. Hill v. Lewis, 1 Salk. 132). On the whole, there is no case requiring that upon the face of this declaration we should infer any other than an intent in the defendant to stand as an ordinary endorser. Why do the cases stop short of that? We have seen that it is because the law either can not charge the defendant as endorser, or it is because he has entered into some special engagement incompatible with that character. No case goes farther.
Then we are brought back to the point where we started. These [222] notes are payable to bearer. The name of Howard is a mere cypher (Grants. Vaughan, 3 Burr. 1526). They are, in effect, payable to bearer without a name. Amy body who holds them may sue upon them in his own name. What does the second count tell us? In the first place, it says that Hall, the defendant, made the notes, his own name being endorsed. It was said to be no matter where the name appears; and to be sure, had the count stopped there, the defect might be said to have stood for a mere informality, an argumentative way of saying that he subscribed. It is no matter where the name appears, if it was intended as a subscription. It may be in the beginning or in any other place (Taylor v. Dobbins, 1 Str. 399; Elliott v. Cooper, 2 Ld. Raym. 1576). Yet in legal effect, that is a subscription, and should be so stated in the declaration. It is a solecism in pleading to say the maker endorsed; and I do not believe it even good in substance and by way of argun.ent, without at least averring that the name was thus put out of its usual place with intent to subscribe. But as if to make the objection a more fatal one in this respect, the declaration immediately goes on to say the name of Coleman was subsci ibed; and then it sets out the notes in hcec verba, with Coleman’s subscription, and adds, “ William L. Hall, endorsed.” No one can suppose this to be good pleading. Not a word is said that Hall, the defendant, was privy to the consideration on which the plaintiff -eceived the *128 note; but the whole is left to its effect under the statute of Ann. True it is averred, that the notes were so endorsed while in the hands of Howard, the payee, and he delivered them to the plaintiff; and it is sought to make this a parallel case with anote payable to Howard or bearer, and remaining with him. The plain difference is, that such a note is not negotiated. That was the case of Nelson v. Dubois, which is mainly relied on. But that case proves too much for the plaintiff. It goes to allow á special guarantj-, not negotiable, as we have seen; and then, in that view, this action must have been by. Howard, the payee, in his own name. I confess, that without special cir- ' cumstances, I can see no great difficulty in the way of charging the [223] defendant as endorser, even if this note still remained with Howard, and the action were brought by him. As I before suggested, I do not believe Nelson v. Dubois opposed to that. But admitting that the endorsement is so far inchoate, all difficulty is removed on Howard’s delivering the notes to the plaintiff. The parties become complete. Here is then, as we have seen, a maker, a payee and endorser, over whose name the holder may write a new bill of exchange. All technical difficulties are out of the way. Howard was but the agent to deliver over the notes which the defendant had endorsed for the benefit of whomsoever might become the holder; for nothing is better settled than that blank endorsements may be filled up with the same words of negotiability contained in the paper on which it stands. Not only the plaintiff, but Howard might have written a bill ot exchange over the defendant’s name, payable to bearer (3 Kent's Comm. 89, 3d ed.) Then no matter how the rights of the original parties might be restrained. The difficulty is gone by a delivery to the plaintiff. He holds a negotiable note, valid in his hands as bearer against the maker, and a bill of exchange of the same nature and equally valid against the endorser. It is well settled, that even though a note may be incapable of affording any legal remedy in the hands of the original holder, yet it may become available when he transfers it. Such was the case of Smith v. Lusher (5 Cowen, 688), where a man made a note for his own" firm, payable to himself or order. This was in effect a note made by himself to himself, and of course he could not sue; but it was held that his endorsee might proceed against the whole firm. Senator Golden (id. 711) mentions a variety of like instances as known to the law merchant.
Where a man is placed in the relation of endorser by any concurrence of circumstances, he is entitled to all the privileges of that character (Eccles v. Ballard, 2 McCord, 388). Among these are a demand and notice of nonpayment at the expiration of the days of grace. That not being averred in the count demurred to, it is therefore defective; and judgment must be rendered for the defendant, with leave to the plaintiff to amend on payment of costs.