## R. I. Simmons v. Atkinson & Lampton Co.

Alteration of Instruments. *Promissory note. Blank spaces. Words inserted. Bona fide holder.*

Where a promissory note is executed and delivered as complete, and, without the maker's knowledge, the payee inserts after his own name the words "or bearer," and also words fixing a place of payment, this is a material alteration, and will avoid the note even in the hands of a *bona fide* holder acquiring it before maturity, although the added words are written in blanks left in the note, and, being in the same handwriting as the body of the instrument, there is nothing on the face of the paper to excite suspicion.

From the circuit court of Pike county.
Hon. W. P. Cassedy, Judge.

Appellees recovered judgment against appellant in the court below for the full amount of the notes mentioned in the opinion. From such judgment this appeal is taken. Several questions were presented by the record and argued by counsel. The controlling question is stated in the opinion of the court, which gives a sufficient statement of the facts.

· *Price & Sternberger*, for appellant.

It was error to overrule the demurrer to the replication. *Fordyce* v. *Kosminsky*, 4 Am. St. R., 18 and authorities cited; Woods' Byles on Bills, 470–484.

The holder of a note must show that a material alteration therein was made innocently. 10 Am. St. R., 238; 37 Am. R., 68.

To change the place of payment without the maker's consent, avoids a note, though in the hands of an innocent purchaser. 3 How. (Miss.), 330; 47 Am. R., 808; 1 Am. & Eng. Enc. L., 508.

There was no authority to fill up the blanks. 2 Parsons,

Con., 723; 3 How. (Miss.), 330; 7 Am. R., 661; 27 *Ib.*, 67; 4 Am. St. R., 25; 1 Am. & Eng. Enc. L., 25.

Because of the blanks the notes could not be regarded as incomplete, and inserting the words was beyond the holder's authority. *Ib.*, 17; 58 Ind., 428; 61 *Ib.*, 566; 68 *Ib.*, 359; 80 *Ib.*, 83; 39 Pa., 383; 3 Barb. (N. Y.), 374; 4 N. H., 455; 1 Allen, 477, 561; 112 Mass., 315; 6 Wall., 80; 15 Am. R., 372; 17 *Ib.*, 92; 10 Am. Dec., 239; 79 *Ib.*, 752.

To hold the maker liable in a case like this would be to compel him to warrant that no alteration would be made. Under such a doctrine a solvent maker could easily be bankrupted by the forgery of the payee.

*R. H. Thompson* and *S. E. Packwood*, for appellees.

As between two innocent persons, he shall suffer who, by his own act, occasioned the confidence and the loss. Story's Eq. Jur., § 387; *Quick* v. *Milligan*, 108 Ind., 419; 22 Am. St. R., 160.

The appellant had it in his power to prevent the alleged alterations by striking out the blanks in the notes. By his own negligence, he is estopped to allege, as against appellees, that the words were improperly inserted. Where one writes an instrument, leaving spaces which can be easily filled without exciting suspicion, and the instrument is altered by inserting appropriate words, he will be liable to a *bona fide* holder, notwithstanding the alteration. 1 Am. & Eng. Enc. L., p. 515; 10 La. An., 1034; 57 Ala., 379; 41 Barb., 465; 21 N. Y., 538; 54 *Ib.*, 234; 67 Pa., 82; 75 *Ib.*, 188; 79 *Ib.*, 370; 13 Bush (Ky.), 204; 63 Ill., 321; 8 Cal., 109; 34 Iowa, 440; *Trigg* v. *Taylor*, 72 Am. Dec. (Mo.), 263; *Young* v. *Grate*, 4 Bing. (Eng.), 253; *Gerrard* v. *Hadden* (Pa.), 5 Am. R., 412.

*Young* v. *Grate* is cited approvingly in Daniel on Neg. Inst., vol. 2, § 1659. See also 2 Morse on Banking, § 480.

When the maker put the notes in circulation it was an invitation to any one to purchase them from the holder. They were in such a condition that words could be easily inserted

without leaving any evidence to indicate the alteration. Appellees having purchased them in the usual course of business, before maturity, the maker ought not to be discharged. *Brown* v. *Reed*, 79 Pa., 370; 25 P. F. Smith (N. Y.), 188.

True, the authorities are not harmonious on the point under consideration, but it occurs to us that common sense and common prudence would suggest to all the impropriety of leaving undefaced blanks in commercial paper. The circulation of such paper is favored. The alterations here were, at most, technical, and the case is unlike those where the amount has been increased. We submit that the demurrer to the replication was properly overruled.

COOPER, J., delivered the opinion of the court.

The appellees sued the appellant on two promissory notes ·of like tenor, one of which is set out in the record, and ·is as follows:

"$100.00.                    MAGNOLIA, MISS., April 30, 1890.

"September 1, 1890, after date, I promise to pay to the ·order of Camp & Ames, or bearer, one hundred dollars at Bank of Summit, Miss: Value received.

"R. I. SIMMONS."

The defendant pleaded that the notes had been materially :altered after .execution by him, in this, that the notes, as executed, were in form as follows:

"$100.00.                    MAGNOLIA, MISS., April 30, 1890.

"September 1, 1890, after date, I promise to pay to the order of Camp & Ames............,........................one hundred dollars at.................................................................................
Value received.                              R. I. SIMMONS."

And that they had been altered by the insertion of the words "or bearer" after the words "Camp & Ames," and of the words "Bank of Summit, Miss.," after the word "at."

The plaintiffs replied that they were *bona fide* purchasers of the notes before their maturity, and that there was nothing upon their face indicating that they had been altered, or sufficient to raise any suspicion that they had; that the added words were written in the same handwriting as the other written parts of the notes, and were written in spaces negligently left by the defendant on the notes when signed by him, and that the alteration was by the forgery of the payees, which was made possible and easy by the negligent act of the defendant in leaving blank spaces in the notes.

The defendant demurred to this replication, and his demurrer was overruled. This ruling of the court presents the first and principal error assigned.

The question presented is one upon which there is direct and irreconcilable conflict in the American authorities. Courts and text-writers have, in very nearly equal numbers, ranged themselves upon opposite sides, and it is difficult, if not impossible, to determine which view is sustained by the greater number.

It is well settled that if one sign a negotiable instrument, leaving blanks to be filled by the payee, and deliver it to him, such payee is thereby made the agent of the maker, and if he exceeds his authority, and inserts an unauthorized amount, the maker will be bound to an innocent holder. *Johnson* v. *Blasdale*, 1 Smed. & M., 17; *Hemphill* v. *Bank*, 6 *Ib.*, 44; *Davis* v. *Lee*, 26 Miss., 505; 1 Am. & Eng. Enc. L., 516.

The author of the article, "Alteration of Instruments," in Am. & Eng. Enc. L., states the rule to be that "where one writes out a note or other instrument so as to leave spaces which can easily be filled without exciting suspicion, and such note or other instrument is altered by filling in these spaces, he will have to suffer the consequences of his negligence, and be liable to a *bona fide* holder for value on the altered instrument." Vol. 1, p. 515.

Mr. Daniel prefers the rule as thus stated. 2 Danl. on Neg. Inst., § 1405.

On the other hand, Mr. Randolph says: " It has now, however, become, in America, an established rule that, if the instrument was complete without blanks at the time of its delivery, the fraudulent increase of the amount by taking advantage of a space left without such intention, although it may be negligently, will constitute a material alteration, and operate to discharge the maker." 1 Randolph, Com. Paper, § 187, and this seems to be the opinion of Mr. Bigelow. Bigelow on Estoppel, 512 (4th Ed.). The courts of Louisiana, Pennsylvania, Kentucky, Alabama, New York, Illinois and California, hold the maker bound on the altered note. *Isnard* v. *Torres,* 10 La. An., 103; *Young* v. *Leedom,* 67 Pa., 351; *Zimmerman* v. *Rote,* 75 *Ib.,* 188; *Brown* v. *Reed,* 79 *Ib.,* 370; *Blakey* v. *Johnson,* 13 Bush (Ky.), 197; *Toomer* v. *Rutland,* 57 Ala., 379; *Redlich* v. *Doll,* 54 N. Y., 234; *Yocum* v. *Smith,* 63 Ill., 321; *Visher* v. *Webster,* 8 Cal., 109.

The courts of New Hampshire, Massachusetts, Michigan, Iowa, Arkansas and also New York, have adopted the contrary rule. *Goodman* v. *Horford,* 4 N. H., 455; *Bank* v. *Stowell,* 123 Mass., 196; *Holmes* v. *Trumper,* 22 Mich., 427; *Bank* v. *Clarke,* 51 Iowa, 264; *McGrath* v. *Clark,* 56 N. Y., 34; *Fordyce* v. *Kosminski,* 49 Ark., 40.

The rule declaring liability upon the maker of an instrument thus altered first found expression in *Young* v. *Grate,* 4 Bing. (Eng.), 253. In that case a banker, having occasion to be absent, left with his wife some printed checks upon his banker signed by him in blank, to be filled up by her and drawn as his business might require. She delivered one of these checks to the clerk, to be filled for fifty pounds. The clerk filled out the check, beginning the word "fifty" with a small letter and in the middle of the blank line left for the same, and showed it to the plaintiff's wife, who directed him to draw the cash. Before presenting it to the banker, this clerk altered the check by inserting before the word "fifty" the words "three hundred and," and then presented it to the banker and drew the larger sum. The plaintiff sued the

banker for his balance, and contended that the loss of the three hundred pounds should be borne by the banker. Under the circumstances, it was held that the loss was attributable to the negligence of the plaintiff's agent (his wife) and that he could not recover.

The English judges have found some difficulty in determining upon what precise principle the decision rests.

In *Bank of Ireland* v. *Evans Charities*, 5 H. L. Cases, the lord chancellor (Cranworth) said: "Now, the case of *Young* v. *Grate* went upon the ground (whether correctly arrived at in point of fact is immaterial) that the plaintiff there was estopped from saying that he did not sign the check for three hundred and fifty pounds."

In *Swan* v. *North British Australasian Co.*, 2 Hurls. & Colt. (Exchq.), Lord Chief Justice Cockburn said: "The case of *Young* v. *Grate*, on which so much reliance has been placed, and which is supposed to have established this doctrine of estoppel by reason of negligence, when it comes to be more closely examined, turns out to have been decided without reference to estoppel at all. Neither the counsel in arguing that case, nor the judges in deciding it, refer once to the doctrine of estoppel."

Lord Cockburn thought that the case really rested upon the principle of avoiding a circuity of action; that the banker, who was the depositary of his customer, while having no right to retain the fund, having no proper voucher for it, would be entitled to recover against the customer for the loss sustained through his negligence, and that this right to a cross action might be availed of in defense.

It seems to be clear that if an action may be maintained against the maker *on the instrument*, it must rest upon the theory that it is his instrument, or, though not his in fact, may be so treated by the holder. The mere fact that the holder has been deceived, and sustained injury by the alteration of the instrument, which alteration was made possible by the negligence of the maker, could not give a right of

action *ex contractu* on the instrument. The action would be in tort, or on the case, for the negligence.

. To make the instrument, as altered, that of the maker, it must be held that the payee, or other party by whom the alteration is made, is his agent, a proposition which has sometimes been advanced or suggested, but which has found but little support in adjudicated cases. *Robarts* v. *Tucker*, 16 Q. B., 560. There is certainly no expectation or intention on the part of the maker of a completed instrument that the person to whom it is delivered shall make any alteration thereof, nor does it ever occur that third persons act with reference to the supposed authority of such person to act as agent of the maker. It certainly would not be held that a negligently drawn instrument constituted the payee the agent of the maker, to change its terms in favor of one to whom such person should exhibit the instrument as the grant of his power, and should profess to act under it. The agency in these cases, if one exists at all, must be a concealed one, unknown and unsuspected by the world. The writing which creates the agency, if exhibited, shows that none exists; it is a valid agency only so long as it is unknown.

The ground of the decision of *Young* v. *Grate,* given by Lord Cockburn in *Swan* v. *North British Australasian Co.,* has been accepted by the English courts as the correct one. *Halifax Union* v. *Wheelwright,* L. R., 10 Ex., 183, and *Swan* v. *North British Co.,* and *Bank of Ireland* v. *Evans Charities,* have been considered as shaking the authority of *Young* v. *Grate,* and *Baxendale* v. *Bennett,* L. R., 3 Q. B., 525.

But, upon whatever ground the liability of the maker is sought to be rested, we are of opinion that none can exist. The maker of a bill of exchange is not bound to act upon the supposition that forgery will be committed merely because an opportunity is afforded by the character of the paper he puts out. In no relation of life do men conduct their affairs as though crime will be committed whenever it may be. It cannot be negligence to do that which can injure no one

unless some one else shall commit a felony, and under circumstances in which no duty is imposed not to do the act. A bailee of goods who negligently exposes them so that they may be stolen, would be liable to the bailor if they are stolen, but this is because he is under duty to the owner not to expose them. But if one negligently keeps his own property, and it is stolen, he does not forfeit his right to reclaim them from a purchaser from the thief, because, as to such person, he is under no duty. So one who issues negotiable paper is under liability only to those who take the contract he has made; he assumes no obligation of another contract, though it may be written on the same paper, and is equally free from liability if the agreement he has made is materially changed, for the agreement as changed is no more his than if all its terms were forged.

*The judgment is reversed, the demurrer to the replication sustained, and cause remanded.*